1    **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Shaunnell Beyart,                        )    No. Civ. 04-2898-PHX-NVW (MS)
                                               )
10                    Petitioner,              )    **ORDER**
                                               )
11   vs.                                       )
                                               )
12                                             )
     Dora B. Schriro, et. al.,                 )
13                                             )
                      Respondents.             )
14                                             )
     _____      )
15

16   **TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:**

17       While confined in the Arizona State Prison Complex in Florence, Arizona,

18   Petitioner filed a pro se Petition for Writ of Habeas Corpus by a Person in State

19   Custody pursuant to 28 U.S.C. § 2254.   Respondents Answer was filed on

20   September 15, 2005.  [Doc. 10].  Petitioner's Reply was filed on October 27, 2005.

21   The Court now Reports and Recommends as follows:

22   **I. BACKGROUND**

23       Petitioner drove his friend, Harold Jackson, to meet a drug dealer from whom

24   Jackson planned to steal a quantity of the illegal drug commonly known as Ecstasy.

25   [Doc. 10, Exh. F at 2; Exh. A at 119, 139-141, 157-172].  During the course of the

26   transaction, Jackson shot and killed the dealer.  [Doc. 10, Exh. F at 2; Exh. A at 117,

27   166-172].  Petitioner was convicted by a jury of: (1) first-degree felony murder, and

28   (2) transportation for sale or transfer of dangerous drugs.  [Doc. 10, Exh. B].  He was

1  sentenced to life imprisonment with the possibility of release after 25 years on the

2  murder conviction and five years' imprisonment on the drug conviction, to be served

3  concurrently.  [Doc. 10, Exh. C].

4      Petitioner appealed to the Arizona Court of Appeals, raising the following issues:

5  (1) whether his felony-murder conviction should be overturned because the evidence

6  presented at trial was insufficient to prove that the quantity of drugs at issue equaled

7  or exceeded the required statutory threshold amount, and (2) whether his sentence

8  for the drug conviction was illegal because the required statutory threshold amount

9  of drugs was not proven at trial.  [Doc. 10, Exh. D at 8].  The Arizona Court of

10 Appeals affirmed.  [Doc. 10, Exh. F].  Petitioner then filed a Petition for Review with

11 the Arizona Supreme Court, raising the same issues he had raised in the Court of

12 Appeals. [Doc. 10, Exh. G].  The Arizona Supreme Court denied review.  [Doc. 10,

13 Exh. H].

14     Petitioner filed his Petition for Writ of Habeas Corpus in this Court on December

15 14, 2004.  [Doc. 1].  In his federal Petition, Petitioner claims that his rights under the

16 Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and his

17 rights under the Arizona Constitution were violated because: (1) the state failed to

18 prove that the amount of drugs at issue met the threshold requirements established

19 by Arizona statute, and (2) "the insufficiency of the evidence of threshold affected

20 the sentence on count two, thus rendering the sentence illegal."  [Doc. 1 at 5-6].

21 Respondents oppose the Petition, arguing that Petitioner's claims were not fairly

22 presented to the Arizona Supreme Court or Arizona Court of Appeals and are now

23 procedurally defaulted.   [Doc. 10].

24 **II. Exhaustion and Procedural Default**

25     No writ may be granted unless it appears that the applicant has exhausted the

26 remedies available in state courts. 28 U.S.C. §2254(b)(1)(A).  Under the exhaustion

27 doctrine, a petitioner must present his claims to the state courts on direct appeal or

28 through collateral proceedings before a federal court will consider a habeas corpus

1   petition.  Rose v. Lundy, 455 U.S. 509 (1982); Lindquist v. Gardner, 770 F.2d 876,

2   877 (9th Cir. 1985).  Specifically, exhaustion requires that a petitioner either fairly

3   present his or her claims to the Arizona Court of Appeals, Swoopes v. Sublett, 196

4   F.3d 1008, 1010 (9th Cir. 1999)(stating that "except in habeas petitions in capital

5   cases, claims of Arizona state prisoners are exhausted for purposes of federal

6   habeas once the Arizona Court of Appeals has ruled on them"), or show that no

7   state remedies remain available.  Kellotat v. Cupp, 719 F.2d 1027, 1029 (9th Cir.

8   1983) (citing Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982).  To satisfy the fair

9   presentation requirement, a petitioner must fairly present the "substance of federal

10   claims to the state courts in order to give the State the opportunity to pass upon and

11   to correct alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513

12   U.S. 364, 365-66 (1995).  See also Baldwin v. Reese, 541 U.S. 27, 29 (2004);

13   Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 278

14   (1971); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).

15     A habeas court will not review a question of federal law if that question has been

16   decided by a state court and the court's decision "rests on a state law ground that

17   is independent of the federal question and adequate to support the judgment."

18   Coleman v. Thompson, 501 U.S. 722, 729 (1991); Park v. California, 202 F.3d 1146,

19   1150-51 (9th Cir. 2000).  The state law ground may be substantive or procedural.

20   Coleman, 501 U.S. at 729-30 (recognizing that the independent and adequate state

21   ground doctrine bars federal habeas corpus review where a state court "declined to

22   address a prisoner's federal claims because the prisoner had failed to meet a state

23   procedural requirement").  To be independent, "the state law basis for the decision

24   must not be interwoven with federal law."  LaCrosse v. Kernan, 244 F.3d 702, 704

25   (9th Cir. 2001).  See also Stewart v. Smith, 536 U.S. 856, 860 (2002)(stating that "[I]f

26   the state court's decision rested primarily on a ruling on the merits . . ., its decision

27   would not be independent of federal law.").  "To be deemed adequate, the state law

28   ground for decision must be well-established and consistently applied."  Bennett v.

1    Mueller, 322 F.3d 573, 583 (9th Cir. 2003); see also Poland v. Stewart, 169 F.3d 573,

2    577 (9th Cir. 1999)("A state procedural rule constitutes an adequate bar to federal

3    court review if it was 'firmly established and regularly followed' at the time it was

4    applied by the state court")(quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)).

5        When a petitioner procedurally defaults his federal claims in state court,  either

6    because he failed to comply with a state procedural rule or because he would be

7    unable to return to state court to present his claims, federal habeas review of the

8    claims is barred unless the petitioner demonstrates cause for the default and actual

9    prejudice or shows that failing to review the claims "will result in a fundamental

10   miscarriage of justice." Coleman, 501 U.S. at 750. "'Cause' is a legitimate excuse

11   for the default; 'prejudice' is actual harm resulting from the alleged constitutional

12   violation." Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  If the petitioner

13   fails to establish cause for his procedural default, the court need not consider

14   whether the petitioner has shown actual prejudice resulting from the constitutional

15   violations.  Smith v. Murray, 477 U.S. 527, 533 (1986).  To show a fundamental

16   miscarriage of justice, a petitioner must make the extraordinary showing that the

17   alleged constitutional violation probably resulted in the conviction of an innocent

18   person.[1] Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478,

19   496, (1986).  The circumstances constituting a fundamental miscarriage of justice

20   apply in only a "narrow class of cases."  Schlup, 513 U.S. at 321.  To establish

21   actual innocence, the Petitioner must show that considering all the evidence, "it is

22   more likely than not that no reasonable juror would have convicted him." Id. at 327-

23   28.

24   **III. Discussion**

25       **A. Alleged Failure to Fairly Present Claims to the Arizona Supreme Court**

26   _____

27       [1]    In most cases, victims of a "fundamental miscarriage of justice" will
             meet the standard for cause and prejudice.  Murray, 477 U.S. at 495-

28           96.

1  Respondents first argue that Petitioner's claims were not properly exhausted

2  because Petitioner failed to fairly present his claims to the Arizona Supreme Court.

3  The Court disagrees.

4  In Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999), the Ninth Circuit

5  established that non-capital Arizona state prisoners may exhaust their claims by

6  fairly presenting them to the Arizona Court of Appeals; exhaustion in the Arizona

7  Supreme Court is not required.[2] Respondents acknowledge the holding of Swoopes,

8  but contend that the United States Supreme Court's decision in Baldwin, 541 U.S.

9  27, rather than Swoopes, controls.  [Doc. 10 at 9].  In so arguing, Respondents cite

10  Baldwin for the proposition that a state habeas petitioner is required to present his

11

12  _____

13  [2]  Swoopes states, "in cases not carrying a *life sentence* or the death

14  penalty, review need not be sought before the Arizona Supreme Court

     in order to exhaust state remedies.  196 F.3d at 1010 (emphasis

15  added).  However, Arizona law no longer requires that a life sentence

     case be appealed to the Arizona Supreme Court.  Arizona Revised

16  Statute ("A.R.S.")§12-120.21(A)(1); A.R.S. §13-4031. The only cases

     that must be appealed to the Arizona Supreme Court are "criminal

17  actions involving crimes for which a sentence of death has actually

     been imposed."  Id.  The language in Swoopes which states that life

18  sentence cases must be appealed to the Arizona Supreme Court

     derives from the language of the statutes before they were amended

19  in 1989.  See A.R.S. §12-120.21(A)(1)(1988), amended by Laws 1989,

20  Ch. 58 § 1; A.R.S. §13-4031 (1988), amended by Laws 1989, Ch. 58,

     § 2.  Before the amendments, the statutes excluded both death penalty

21  and life imprisonment cases from Arizona Court of Appeals jurisdiction,

     making the Arizona Supreme Court the only court to which these cases

22  could be appealed.   Id.   Swoopes  apparently relies on these older

     statutes because the conviction and appeal at issue in that case were

23  decided before the 1989 amendment of the statutes.  The review now

24  available is discretionary in nature.  Such review is "unavailable" under

     Swoopes.  See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).  Because

25  Petitioner was convicted after the statutes were amended in 1989, he

26  is only required to present his claims before the Arizona Court of

     Appeals, despite the fact that he was sentenced to life imprisonment.

27

28

1   claims "in each appropriate state court, including a state supreme court with powers
2   of discretionary review." [Id.].

3       Respondents' argument is unavailing for several reasons.  First, the issue in
4   Baldwin was *not* whether exhaustion in a state supreme court is always required.
5   The issue presented was instead whether a state supreme court with powers of
6   discretionary review is required to read lower court opinions or other materials in
7   order to discover federal claims.  Baldwin, 541 U.S. at 32 ("We consequently hold
8   that ordinarily a state prisoner does not "fairly present" a claim to a state court if that
9   court must read beyond a petition or a brief (or a similar document) that does not
10  alert it to the presence of a federal claim in order to find material, such as a lower
11  court opinion in the case, that does so").  The Court's parenthetical reference to
12  "state supreme court[s] with powers of discretionary review" is therefore not
13  dispositive.

14      Moreover, O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999), one of the two cases
15  cited by the United States Supreme Court in connection with the Baldwin statement
16  quoted by Respondents, was extensively examined by the Ninth Circuit in Swoopes.
17  O'Sullivan held that "state prisoners must give the state courts one full opportunity
18  to resolve any constitutional issues by invoking one complete round of the State's
19  established appellate review process." O'Sullivan, 526 U.S. at 845.  The  Court
20  determined that, under Illinois law, the availability of discretionary review in the
21  Illinois Supreme Court required exhaustion to that court.  O'Sullivan, 526 U.S. at
22  848.  However, O'Sullivan's holding was expressly limited.  The Court wrote: "there
23  is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or
24  rule providing that a given procedure is not available." O'Sullivan, 526 U.S. at 847-
25  848.  In Swoopes, the Ninth Circuit determined that discretionary view in the Arizona
26  Supreme Court was "unavailable" under O'Sullivan.  Swoopes, 196 F.3d at 1010.
27  As such, the Court held that exhaustion in Arizona ends at the Court of Appeals.  Id.

28

1  Just as discretionary review is unavailable in the Arizona Supreme Court under

2  O'Sullivan, it is unavailable under Baldwin.

3      Finally, subsequent to Baldwin, the Ninth Circuit reinforced Swoopes.  In Castillo

4  v. McFadden, 399 F.3d 993, 998 n. 3  (9th Cir. 2005), the Court reiterated that the

5  claims of Arizona state prisoners are exhausted for purposes of federal habeas once

6  the Arizona Court of Appeals has ruled on them.   Castillo, 399 F.3d at 998 n. 3

7  (quoting Swoopes, 196 F.3d at 1010).  Swoopes remains the law of this Circuit.[3] For

8  the foregoing reasons, the Court rejects Respondents' argument.

9      **B. Alleged Failure to Present Claims to the Arizona Court of Appeals**

10      Respondents further contend that Petitioner failed to fairly present his claims as

11  federal issues in the Arizona Court of Appeals.  The Court agrees.

12      To fairly present a claim, a federal habeas petitioner must provide the state courts

13  with a fair opportunity to apply controlling legal principles to the facts bearing upon

14  the federal constitutional claim.  Baldwin, 541 U.S. at 29; Duncan, 513 U.S. at 365-

15  66 (1995).  The state prisoner must describe in the state proceedings both the

16  operative facts and the federal legal theory on which his claim is based.  Kelly v.

17  Small, 315 F.3d 1063, 1066 (9th Cir. 2003).  See also  Anderson, 459 U.S. at 6 ("It

18  is not enough that all the facts necessary to support the federal claim were before

19

20      [3]     While Swoopes could be construed as requiring review by the Arizona

21      Supreme Court of all state life imprisonment and death penalty cases

22      as was the fact when it was decided in 1987, this Court looks to the

23      holding as one relating primarily to "non-availability" of discretionary

24      review.  In that sense, cases involving a sentence of life imprisonment

25      are generally subject to review by the Arizona Court of Appeals rather

26      than by the Arizona Supreme Court, see fn. 2, *supra* at page 5, and are

27      included in the same rule as other non-death penalty cases for

28      purposes of exhaustion of state remedies.   The Swoopes rule of

        exhaustion is not so much based on the penalty imposed (except in

        cases of a sentence of death) as it is the question of whether the state

        requires the state's highest court to consider an appellant's (or

        petitioner's) claim(s) and enforces that requirement.

1   the state courts or that a somewhat similar state-law claim was made"); <u>Picard</u>, 404

2   U.S. at 276 ("we have required a state prisoner to present the state courts with the

3   same claim he urges upon the federal courts"); <u>Lyons v. Crawford</u>, 232 F.3d 666,

4   670 (9th Cir. 2000), amended at 247 F.3d 904 (9th Cir. 2001)(holding that a petitioner

5   must characterize the claims raised in state proceedings "specifically as federal

6   claims").  Generally, the petitioner must reference specific provisions of the federal

7   constitution, federal statute, or federal case law.  <u>Lyons</u>, 232 F.3d at 670, amended

8   at 247 F.3d 904.  General appeals to broad constitutional principles such as due

9   process, equal protection, and the right to a fair trial are insufficient to establish

10  exhaustion. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 163 (1996); <u>see</u> <u>also</u> <u>Hiivala v.</u>

11  <u>Wood</u>, 195 F.3d 1098, 1106 (9th Cir. 1999).

12      As noted above, Petitioner argued in state court that: (1) the evidence presented

13  at trial was insufficient to prove that the quantity of drugs at issue equaled or

14  exceeded the statutory threshold amount, such that Petitioner's felony murder

15  conviction could not be sustained, and (2) because the statutory threshold amount

16  of drugs was not proven at trial, Petitioner's sentence for the drug crime was illegal.

17  [Doc. 10, Exh. D at 8, Exh. E. at 2, Exh. G. at 2].  In support of his first state court

18  argument, Petitioner relied primarily on Arizona statute and state case law from other

19  jurisdictions.  [Doc. 10, Exh. D at 9-14, Exh. E at 3-9, Exh. G at 6-10].  Although the

20  caption of Petitioner's first argument in his opening and reply briefs to the Court of

21  Appeals referenced the Fifth, Sixth, and Fourteenth Amendments to the United

22  States Constitution, [Doc. 10, Exh. D at 9, Exh. E at 3], Petitioner did not elaborate

23  upon how his rights were violated.  Additionally, the only federal case cited by

24  Petitioner in his opening brief to the Court of Appeals was not offered to show that

25  a deprivation of Petitioner's federal constitutional rights, but to show that Ecstasy can

26  be classified as an amphetamine.  [Doc. 10, Exh. D at 13].  Likewise, although

27  Petitioner cited some federal authority in his Reply brief in the Court of Appeals and

28  in his Petition for Review to the Arizona Supreme Court, none of this federal

1   authority supported a Fifth, Sixth or Fourteenth Amendment claim.  [Doc. 10, Exh.

2   E at 4-5, 9, Exh. G at 9-10].  Moreover, the relevant portion of Petitioner's second

3   state court issue was supported only by state law.[4]  [Doc. 10, Exh. D. at 15-18, Exh.

4   E at 10-14, Exh. G at 10-12].

5       Although citation to a state case analyzing a federal constitutional issue may

6   sometimes serve the same purpose as a citation to a federal case analyzing the

7   issue, Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc), "for a

8   federal issue to be presented by the citation of a state decision dealing with both

9   state and federal issues relevant to the claim, the citation must be accompanied by

10  some clear indication that the case involves federal issues." Casey, 386 F.3d at 912

11  n. 13.  Here, nothing in the case law or Petitioner's brief put the Arizona Court of

12  Appeals on notice that Petitioner was attempting to raise a federal claim.

13      The Court further finds Petitioner's solitary reference to the Fifth, Sixth, and

14  Fourteenth Amendments in the caption of his first state court argument insufficient

15  to establish fair presentation.  The Ninth Circuit recently reiterated that exhaustion

16  requires petitioners to delineate a relationship between a particular federal citation

17  and the claim being alleged.  Castillo, 399 F.3d at 1002-03 ("Exhaustion demands

18  more than drive-by citation, detached from any articulation of an underlying federal

19  theory").  In Castillo, the Ninth Circuit held that a Petitioner's citation to the Fifth,

20  Sixth, and Fourteenth Amendments to the United States Constitution in the parting

21

22      [4]    In connection with his second claim, Petitioner did argue that any retrial
              would be barred by principles of double jeopardy.  [Doc. 10, Exh. D at
23            18-21, Exh. E at 14-18].  Petitioner cited federal authority in support of
              this argument.  [Id.].  However, Petitioner's double jeopardy argument
24            does not save federal habeas Petition because the question whether
              retrial is an appropriate remedy arises only if Petitioner's sentence is
25            found illegal.   As explained in the body of this Report and
              Recommendation, the  illegal sentence issue was not fairly presented
26            and is procedurally defaulted.  Thus, whether double jeopardy would be
              violated were retrial ordered as a remedy is a secondary issue that
27            need not be reached by this Court.
28

1  sentence of his brief to the Court of Appeals was insufficient to support a finding of
2  fair presentation.  Id. at 1002.  The Court explained that Castillo's "conclusory,
3  scattershot citation of federal constitutional provisions, divorced from any articulated
4  federal legal theory . . . left the Arizona Court of Appeals to puzzle over how the
5  Fifth, Sixth, and Fourteenth Amendments might relate" to Castillo's claims.

6      Here, as in Castillo, Petitioner left the state court "to puzzle" over the relationship
7  between his state court arguments and the federal Constitution.  He neither identified
8  any specific ways his federal rights were violated nor related the federal Constitution
9  to the operative facts of his case.  Instead, the body of his brief focused on state
10  statutory definitions and state law principles.  Just as broad references to
11  constitutional principles and "scattershot" citations are insufficient to meet the
12  requirements of fair presentation, Petitioner's detached citation to the federal
13  Constitution fails to fairly present his claims.

14      In Arizona, post-conviction proceedings must be initiated under Rule 32 of the
15  Arizona Rules of Criminal Procedure within ninety days of the entry of judgment and
16  sentence or within thirty days of the order and mandate on the judgment and
17  sentence on direct appeal.[5]  See Ariz.R.Crim.P. 32.4(a).[6]   Thus, were Petitioner to

18

19      [5]   An exception to this rule may exist under Rule 32.2(b) for a defendant
20      who raises claims under Rules 32.1(d), (e), (f), (g), or (h).  None of the
21      claims at issue here were raised under those subsections of Rule 32.1.

22      [6]   Petitioner's claims would also likely be precluded pursuant to Rule
23      32.2(a)(3), as were the other claims he failed to raise in his initial post-
24      conviction relief petition. See Ariz.R.Crim.P. 32.2(a)(3) (stating that "[A]
25      defendant shall be precluded from relief under this rule based upon any
          ground.... (3) that has been waived at trial, on appeal, or in any
26      previous collateral proceeding").  However, in Cassett v. Stewart, 406
          F.3d 614 (9th Cir. 2005), the Ninth Circuit recently held that preclusion
27      may not always be clear under Rule 32.2(a)(3) in cases of technical
          exhaustion and procedural default.  In light of Cassett, this Court places
28      only secondary reliance on rule 32.2(a)(3).

1   attempt to return to state court, his claims would be time- barred.  Id.  Because

2   Petitioner would be precluded under Arizona law from returning to state court to

3   properly exhaust his claims, the claims are deemed "technically exhausted" but

4   procedurally defaulted.  See Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); see

5   also Cassett, 406 F.3d at 621, n. 5 (discussing the concepts of technical exhaustion

6   and procedural default).

7       Federal habeas review of the merits of Petitioner's procedurally defaulted claims

8   by this Court is barred unless Petitioner can show cause for the procedural default

9   and actual prejudice, or that failure to consider his claims will result in a fundamental

10  miscarriage of justice.  Coleman, 501 U.S. at 750.  Petitioner has not done so.  In his

11  Reply brief, Petitioner argues only that he properly exhausted his claims in the

12  Arizona Court of Appeals and the Arizona Supreme Court.  [Doc. 15 at 1-3].  For the

13  reasons stated above, the Court disagrees.  Moreover, the Court's review of the

14  Petition and record reveals no basis for finding either cause and prejudice or a

15  miscarriage of justice.  Accordingly, it is recommended that Petitioner's Petition be

16  dismissed with prejudice.

17      **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas

18  Corpus [Doc. 1] be **denied** and **dismissed** with prejudice.

19      This recommendation is not an order that is immediately appealable to the Ninth

20  Circuit Court of Appeals.  Any notice of Appeal pursuant to Rule 4(a)(1), Federal

21  Rules of Appellate Procedure, should not be filed until entry of the district court's

22  judgment.  The parties shall have ten (10) days from the date of service of a copy

23  of this recommendation within which to file specific written objections with the Court.

24  28 U.S.C. §636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of Civil

25  Procedure.  Failure to timely file objections to any factual determinations of the

26  Magistrate Judge will be considered a waiver of a party's right to *de novo*

27  consideration of the factual issues and will constitute a waiver of a party's right to

28  appellate review of the findings of fact in an order or judgment entered pursuant to

1    the Magistrate Judge's recommendation.

2        **DATED** this 7th day of February, 2006.

3

4

5    _____

6    Morton Sitver
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28